Good morning. Jeff Jones for the appellant, Manuel Primas. If I may I would reserve two minutes for rebuttal. Manage your own time. I will. Mr. Primas's confession in this case was taken after he had unambiguously asserted his right to remain silent. The police officer who interrogated Mr. Primas, Detective Woodward, made it clear that he wanted to question Primas about one thing, the murder of Rick Collier. Mr. Primas told him, I don't even want to talk about it. Now the Supreme Court has held that an invocation of the right to remain silent doesn't have to be technically worded or sophisticated. It simply has to be in terms a reasonable person would understand. In a case that came out last year from the Supreme Court, Bergwies v. Tompkins, the court said a defendant can invoke his right to remain silent by saying something as simple as, I don't want to talk to the police. That's the essence of what Mr. Primas said in this case. So the essence of your argument is that this was unambiguous, correct? This was not ambiguous. That is the crux of my argument, yes. And the ambiguity or non-ambiguity of the statement has been reviewed by the California court, correct? Yes. And they say it was ambiguous, correct? Yes. And so what is my standard of review in determining whether they're wrong or whether they're right? You would have to determine that they were wrong. You would have to determine that no reasonable jurist could come to that conclusion, that it was an objectively unreasonable decision. And I'd have to have some Supreme Court precedent, wouldn't I, that would suggest they were absolutely wrong, based on what precedent that court put together? It would have to be objectively unreasonable in light of Supreme Court precedent, correct? Yes. And so in that situation, what case would I really look at in order to say this is, that the California Supreme Court is just out to lunch? This is unambiguous. What's your best case? Miranda. Miranda v. Arizona is the best case? It's the primary case, yes. That's the rule here. That's the Supreme Court precedent that was unreasonably applied. Another case that's very germane is Smith v. Illinois. Well, but he was Mirandized, was he not, in the second? Absolutely. But that, for purposes of this claim, that's irrelevant because the contention is that he invoked his right to silence prior to being Mirandized, requiring the termination of the interview. So is the – is his request for silence the first time he was interviewed, or is it during the time they were giving him his I don't want to talk about it. At that time. You're saying during the Miranda rights, if you will, invocation, that's when it was? It wasn't prior, on the day or two before? No, it was on January 3rd, about 30 seconds before he was Mirandized. I see. So in your view then, the statements there are unambiguous. Unambiguous, yes. I do not even want to talk about it as unambiguous. It's critical, of course, that the California Court of Appeals What about this idea that he's only indicating that he's tired of hearing people say he was somehow involved or that he was distraught? I think he's all of those things, but nothing – those things, being frustrated or tired or not wanting to hear about this anymore, is in no way inconsistent with asserting your right to silence and wanting to terminate the interview, or simply asserting your right to silence. Well, you can say, I don't want to talk, or you can say, I'm tired of hearing about this. That's quite different. He said both? Well, I guess that was what the California Court focused in on, and they said he didn't say both. He was only tired of hearing people say he was somehow involved. They focused on his body language and his demeanor during the tape, during the videotape. And I think the video of this is critical. It's going to speak for itself, because all the courts to look at this, and the California Court of Appeal included, have looked at the videotape of the interview. Now, the California Court of Appeal noted that by his head movements, he indicated he had no problem talking about the case. He nods his head, okay, I'll talk about it. What's critical about that is that's a response to the interrogation continuing after he invoked his right to remain silent. The California Court of Appeal relied on that, and it's constitutionally irrelevant, because it's what he – it's his reaction to an interrogation that continued after he invoked his right to remain silent. So when you're looking at that video, what's critical is to stop it, to stop the viewing – the Supreme Court precedent requires this, I believe – to stop the viewing when he says, I don't want to talk, I don't even want to talk about it, because what he says after that can't be considered, and his body language after that can't be considered. It can absolutely be considered up to that point, his demeanor and all that. But once he invoked his right to remain silent and said, I don't even want to talk about it, that has to be ambiguous based on what happened up to that point and not beyond it. And that's – that is what makes the California Court of Appeal's decision objectively unreasonable in this case. So that's the key to the whole analysis, is to look at what he says before he gave – he was given Miranda rights. I think so. I think that's critical, yes. And to look on that date, that particular date, the second interview date. Yes, absolutely. The first date is irrelevant. Yes. To this claim – to the claim that's on appeal now, the first – the first – the December 29th interview is not relevant. Okay. No argument that that's related. All right. No argument that that's related. To conclude, when you view – when you view that video up to and including the point where he says, I don't even want to talk about it, man, there is nothing in the video – there's no body language, there's no movement of his head or anything else up to that point that in any way negates or renders ambiguous the plain meaning of his statement. And the plain meaning of that statement does have to be given effect. And that is the reason that the California Court of Appeals' decision is unreasonable in this case. So let's talk about the prejudice. Absolutely. I mean, even if it was admitted, we still have to determine if there's prejudice, correct? Yes. Well, he incriminated – he gave incriminating statements to his girlfriend, which he – she testified to at trial. Savoy testified. He saw P enter into the area when Collier was shot, saw him flee to the car after the shooting. Markdale testified that shortly before Collier was shot, P had borrowed a scale from Markdale in anticipation of purchasing the drugs from Collier, and all said that your client was involved in the attempted robbery. He witnessed, watched, shoot Collier, and he also witnessed your client assisting in the attempt to rob Collier. What's the prejudice? The prejudice is that the videotaped confession that was watched by the jury was the most powerful piece of evidence in the case, and it was the piece of evidence the prosecution relied on almost to the exclusion of everything else. It's not that the prosecution had a weak case without – without – that it – there was substantial evidence supporting his guilt without the confession, but the confession was the linchpin of the prosecution's case. It was the prosecutor started the closing argument with it and finished the closing argument with it, started the rebuttal with it and finished the rebuttal with it and brought it up over and over, and that's not true with any other piece of evidence. It was the foundation of the prosecution's case, and that satisfies Brecht. And I cited a – I've cited a case, Arnold v. Terhune, I think it is. It's a 2005 case from this Court, cited in both my briefs. And it goes just to that point, to a Brecht analysis, and the point there is the prosecution's case wasn't necessarily that weak. It wasn't – it was still a decent case. Well, if it wasn't weak and they could convict, then there is no prejudice. There is under Brecht, because the question under Brecht is whether the – whether the evidence challenged the confession in this case, whether that affected the jury's verdict, not whether the jury might – not the probability the jury would have reached the same verdict without that. It's the – it's the – when you have – when you have in this case, when it's the piece of evidence that is unquestionably most central to the prosecution's entire case, that does satisfy Brecht. You have about a minute left, Your Honor, reserve. I'm – yes. Thank you, Your Honor. May it please the Court, my name is Catherine Nieto, and I represent the Respondent in this case. And I would like to directly address why the State court's denial was reasonable. And there's one thing that Mr. Jones and I agree on, and that is that viewing the videotape in this case is critical. They say a picture is worth a thousand words. I think in this case, the videotape is worth a thousand words. And I viewed it last night, and I rewound it probably about five or six times to go over this piece of the conversation that we're talking about. And what struck me about Mr. Primus' responses when he was making these statements was that he said them directly in response to Detective Woodward's statement that your name keeps popping up. And Mr. Primus responded, and he says, you know, I don't want to hear about it, I don't want to talk about it. But I could hardly hear him say, I don't want to talk about it. I had to rewind the tape three or four times, and then when did he say that? But what he really said is, I don't want to hear about it. He said that – I mean, he made all these statements, don't get me wrong, but they were all said together. And you could really tell that he just didn't want to hear about these rumors and his name popping up. And then immediately after that, the detective said, well, I'd like to be able to just run information by you and have you listen. And he said, okay, and I'd like to resue your rights. And then he very willingly, during the Miranda advisements, he shakes his head, you know, nodding, nodding in agreement that he would like to go ahead and listen. You know, he's curious. He wants to hear what the detective has to say. So the part that we're arguing about, what really struck me on the videotape was that it's hard to understand him invoking a right to remain silent. It's hard to get that from his statements. It's much easier to get that he just doesn't want to hear about rumors. Yeah, I mean, that's the clear import of what I heard. Can you get both interpretations of what he's saying? Is it – can you somehow – could one conclude that he is invoking his right? Is it ambiguous? I mean, what do you think? I think it's much easier to reach that conclusion just from the cold transcript. If you isolate his statements and you look at them slowly, and you really – you look at the statement just by itself, I think you could reach that conclusion. But I think when you view the videotape, you can't. And I'm convinced that – I would say please, you know, watch it if you haven't had a chance. Because when you watch the videotape, it's anything but clear. And in fact, he seems very willing to want to talk to the police. Without the videotape, would you – would one likely conclude that he has invoked his rights? I think that without the videotape, an argument could be made. But I think that that's one interpretation. I think that another reasonable interpretation that the State courts reached was that, when we said it, and it does come across quite ambiguous. It's just – you know, it's not as clear as you. You know, I don't want to talk to you. Well, if he says just by looking at the transcript, I don't want to hear about it, I don't want to talk about it, that's pretty clear, isn't it? Well, again, it comes right after the detective saying, you know, your name's been popping up. I don't want to hear about it, I don't want to talk about it. And so I can make the argument that that's – he doesn't want to hear about his name being popped up. He doesn't want to hear what they've been saying about him. Not that he doesn't want to talk about the case. Except he says, I don't want to talk about it. I mean, that's – the problem is, you know, if he – if in fact he has unambiguously said, I'm not going to talk about it, it doesn't really matter if he were Mirandized later, right? I agree. So the whole key is whether it's ambiguous or not. Exactly. And the Tompkins case is really helpful on that point. Because Tompkins says that, you know, really the whole purpose of Miranda is to make sure that an accused knows of his rights and that he's well aware of his rights. And in this case, what I really like about this interrogation is the detective at the beginning says, you know, he's very clear. I want to talk to you about Big Rick. I don't want to talk to you about the drug case. And then Mr. Primus is quite interested. You know, he says, well, what does that have to do with me or how do I fit in? And that's where the detective goes on and talks about, well, your name keeps popping up. And he says, oh, I don't want to hear – I don't want to talk about it. I don't want to hear about it. Again, it's hard to make out, you know, an invocation. But then immediately after, I really like that the detective says, I'm going to – I'm going to tell you about what we have. You can listen. You don't have to respond at any point. You can terminate this. And then he immediately reads Mr. Primus' rights. And Mr. Primus clearly understands, if you watch the videotape, there's no question that he understands what's going on. In fact – Right. But if – go ahead. No, no. You're – But if I read Smith v. Illinois, it seems to me that the accused post-request responses to further interrogation cannot be used to case retrospective doubt on the clarity of the initial request. That's what it says. I read the language exactly. If I read Anderson v. Terhune, which is our case, we say, subsequent statements in response to continued interrogation cannot be used to find a waiver or cast ambiguity on the earlier invocation. So when I read those, don't you think that the state court then has relied on improper evidence in making its decision? No, I don't. Those cases – How can they rely, then, on what he said or what he did thereafter? Well, as I was trying to explain the way that this statement is made, it – he's making about three or four statements all together. They're lumped together, and it's not clear. In contrast, if you look at Smith and also Anderson, those were two cases where, you know, in Smith, he's being read his rights, and you have a rights attorney, and Smith says, I'd like to do that, you know, or he directly responds, that's what I want. You know, I don't think I've got it completely accurate. And then in Anderson, the defendant, you know, during – or the suspect during the interrogation said, I plead the fifth. So we have a real contrast in terms of the clarity of those statements. And then in our case – Well, I'm not really so worried about the clarity of the statements during, because you're arguing they're ambiguous, so I have to look at them and determine whether they are. What I'm suggesting is, and since I'm on AEDPA review, it seems as if the state court relies on after-invocation statements to say that the invocation statements were ambiguous, which, as I understand Smith and Anderson, I cannot do. And therefore, they would be wrong. I disagree again, and I would like to point out, in Anderson, the Court does say context is important, and that's in the majority opinion. And in this case, the state court also relied, the court of appeal relied on the superior court's finding that during the suppression hearing, the detective explained, you know, I took his statement to mean, I don't want to talk about the rumors. And so they looked at that, and they looked at, you know, what did the detective testify at the suppression hearing was his understanding at that point in time. And they also viewed the videotape. But don't we analyze the statements under an objective and not a subjective standard? Correct. So what he thought he heard really doesn't make a difference to our analysis, does it? That, you're correct on that, Your Honor. I do think it's important, though, extremely important in this case, that the videotape was viewed by these courts. And I think it's problematic if you just take a statement in isolation. I think that that's where we run into problems. But I think that, you know, it's- Yeah, but you can also, people just talk. I mean, if somebody's a seasoned, experienced criminal, then they understand that they're supposed to say some magic words. But Miranda's also supposed to protect those people who are not experienced with the criminal justice system and often talk in rambling sort of terms. Right. So the fact that it's rambling, it's not connected, it's not, all right, I'm going to write out my affirmation here in legal language, that often doesn't happen. That's true. So what about prejudice? Do you want to turn to the prejudice part? Sure. I mean, I think you've heard the discussion. There's other evidence and a lot of it. But I would say that the confession seems to be a rather pivotal part of the prosecution's case. True? True. Although, I think even more persuasive in this case were his statements to his girlfriend right after the crime. He explained to her that they were there to rob Big Rick. And then he basically directly implicated himself in being there at the time of the shooting. You know, he said, I didn't shoot him. He made statements to his girlfriend, or his girlfriend overheard him making statements, directing people to get rid of the masks. And so to me, those are the statements that you, as a jury, I think you would pay a lot of attention to, because he's talking to someone that he trusts. And he, I think even probably more credible than, you know, during an interrogation where the suspect obviously has a reason to try to get a deal, or, you know, to try to make himself look good when he makes a statement to someone that he loves and is close to. I thought that evidence was crucial. And then we have the phone records that tied, that really pointed to the fact that Mr. Primus was the one that set this whole thing up. We have the co-defendant's testimony, which definitely places him there. And I think juries are smart enough that, you know, they can put this all together, and they can understand that, hey, this guy was definitely part of this. Thank you. Any further questions? If there's no more questions. No, I think Judge Oliver has one. Just one very quick. Yes. Just turning back to the videotape, and this is pre-Miranda warnings. Does the videotape help us at all in regard to those first two or three statements he made about, I don't want to talk about it, I don't want to hear about it? Is the videotape helpful on that part of it at all? Oh, it's extremely helpful. I think that you have to watch the videotape in this case. I don't think you can decide the case without watching it. Thank you, Your Honor. Thank you. No rebuttal. Just a very, just a very brief reply. We do agree the video is key, and he clearly, I think he, when you watch the video, he'll agree, he does, it is clear that he says, I don't even want to talk about it, man, that those are his exact words. If it's hard to understand, it's not the highest quality videotape, it's not Blu-ray. But when you watch that moment where he says, I don't even want to talk about it, he says that emphatically. When you look at his body language, I don't even want to talk about it. He says it, and he speaks very colloquially. But he adds, his body language there adds emphasis to the statement. The detective talked about his name popping up, but Detective Woodward repeatedly told him, I'm not talking to you about the drug case, I want to talk to you about Rick, Big Rick's murder. The detective said that over and over. So when Primus says, I don't even want to talk about it, the only reasonable conclusion is that it means the investigation of Rick Collier's murder. Because that was, the detective made it very clear that's what he wanted to talk about. Finally, with regard to Brett, if Hicks, the girlfriend, if her testimony was more persuasive than the actual videotape of the defendant giving the details of the crime, that goes into much more details than Hicks knew, if that, if that, if the girlfriend's testimony was more persuasive than watching the defendant on the screen tell the story of the crime, then the prosecutor in this trial obviously didn't think that was the case. Because she discussed the videotape many, some multiple of times more than she invoked Hicks' testimony. That's all. Thank you, counsel. Thank you both for your arguments this morning. The case, as heard, will be submitted for decision.
judges: Oliver, Thomas, Smith